UNITED STATES of America

v.

**Art LNU, a/k/a Wizard, a/k/a Artie, a/k/a Art Ramirez Arturo Ramirez, Appellant.**

No. 05–5042.

United States Court of Appeals, Third Circuit.

Argued on Sept. 9, 2008.

Filed: July 29, 2009.

Lawrence S. Krasner, Esq. (Argued), Krasner Law Offices, Philadelphia, PA, for Appellant.

Ewald Zittlau (Argued), Assistant United States Attorney, Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge, McKEE, and SMITH, Circuit Judges.

## OPINION

SMITH, Circuit Judge.

Appellant Arturo Ramirez was convicted of various charges stemming from his par-

ticipation in a conspiracy to distribute large quantities of cocaine. On appeal, Ramirez raises two questions that this Court has not yet addressed: 1) whether Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522, bars the in-trial use of testimony and materials sourced from an unsealed set of wiretap recordings, which are identical to a properly sealed set; and 2) whether the failure to broadcast audiotape evidence through a public courtroom speaker as it is being played through headphones for the trial participants denies a defendant his Sixth Amendment right to a public trial.[1] We answer both inquiries in the negative, and will affirm the judgment of the District Court.

## I.

In November and December of 2002, the Pennsylvania Superior Court authorized two wiretaps on mobile telephones used by Steven Carnivale. Pursuant to these wiretaps, authorities simultaneously recorded Carnivale's telephone conversations on three separate tape recorders. This resulted in three identical sets of tapes. One set was judicially sealed (the "Sealed Set") and stored. The other two sets were left unsealed (the "Unsealed Sets") and were used for investigative and trial preparation purposes.

The contents of the intercepted telephone conversations implicated Ramirez in a conspiracy to distribute more than five kilograms of cocaine. On January 7, 2003, a federal grand jury indicted Ramirez on seven criminal counts related to his alleged participation in this conspiracy: conspiring to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846; attempted distribution of more than 500 grams of cocaine, and aiding and abetting, in violation of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2; four counts of unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b); and distribution of more than five kilograms of cocaine, and aiding and abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.

Before trial, the Government notified Ramirez that it intended to introduce audiotape copies of the wiretap recordings as trial evidence and to provide jurors with transcripts of the recorded conversations that they could use as an aid to their understanding of those conversations as the tapes were played. The Government used the Unsealed Set to create both the copies and the transcripts. Ramirez filed a motion to suppress. In his motion, Ramirez argued that since the copies and transcripts were not derived from the Sealed Set, they did not meet Title III's sealing requirements and could not be used at trial. After conducting an evidentiary hearing on the matter, the District Court denied Ramirez's motion.

On January 8, 2004, Ramirez was jointly tried with three co-defendants. At trial, the District Court admitted the audiotape copies into evidence over Ramirez's renewed objections. The District Court also made the transcripts of those audiotapes a part of the record so that they were available to the public.

On the morning of January 14, 2004, the Government played seven recorded conversations that implicated Ramirez in the conspiracy, and elicited testimony from Carnivale about those conversations.

---

1. Ramirez also argues that his sentence to the mandatory minimum term of imprisonment was unconstitutional, but acknowledges that he cannot prevail on this claim if we follow *United States v. Walker*, 473 F.3d 71 (3d Cir. 2007), and *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Because we are bound by these precedents, we will reject Ramirez's sentencing challenge without additional comment.

Presentation of this evidence took approximately one hour. All the trial participants—the judge, jury, attorneys for all parties, Carnivale, and Ramirez—used headphones to listen to the recordings that the Government played. The jurors also had transcripts of the recordings in their possession. Without notifying the Court or Ramirez, however, the Government turned off the public loudspeaker that would have broadcasted the recordings into the courtroom. As a result, any members of the public who attended the trial that morning were unable to hear the recordings as they were being played for the trial participants.[2]

During the Court's lunch recess, Ramirez learned that the recordings played in the morning were not simultaneously broadcasted into the courtroom. Once the Court reconvened, Ramirez's counsel notified the Court of this fact and moved for a mistrial or, in the alternative, to strike the testimony elicited based on the recordings. Ramirez argued that the failure to broadcast the conversations over the public loudspeaker violated his constitutional right to a public trial. In response, the Government stated that it had intentionally chosen not to play the tapes over the loudspeaker to ensure that inadmissible portions of the tapes were not accidentally heard.

The District Court remarked that the Government's explanation seemed "[dis]ingenuous." The Court pointed out that the Government could have avoided any accidents by simply stopping the tapes before reaching any inadmissible portions. Nonetheless, the Court denied Ramirez's motion for a mistrial or to strike. The Court held that Ramirez had waived the issue by failing to raise it earlier. It also concluded

that Ramirez had not been prejudiced by the Government's actions. The Court, however, ordered that the remainder of the recorded conversations played for the jury should be broadcasted simultaneously over the public loudspeaker.

After the Court's ruling, the Government played thirty-six additional wiretap recordings, twenty of which were conversations between Ramirez and Carnivale. Each of the thirty-six recordings were broadcasted over the public loudspeaker as they were played for the jury.

At the conclusion of the two-week trial, the jury found Ramirez guilty of all charges. Since Ramirez had one prior conviction for a felony drug offense, he was subjected to a mandatory minimum term of imprisonment of twenty years pursuant to 21 U.S.C. § 841(b)(1)(A). After conducting a hearing, the Court sentenced Ramirez to twenty years of imprisonment, ten years of supervised release, a $2,000 fine, and a special assessment of $700. Ramirez filed a timely appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Ramirez has raised purely legal issues of statutory and constitutional interpretation, so our review is plenary. *United States v. Coleman,* 451 F.3d 154, 156 (3d Cir.2006).

## II.

■ Ramirez's first claim of error is that the District Court improperly allowed the Government to present wiretap evidence at trial, in violation of Title III of

---

**2.** It is unclear whether any members of the public actually attended the trial that morning and were unable to listen to the recordings. This factual dispute does not affect our analysis.

the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522. Ramirez argues that Title III prohibits the Government from 1) introducing the audiotape copies of unsealed wiretap recordings into evidence, 2) using transcripts of those recordings at trial, and 3) eliciting trial testimony about the contents of those recordings.

The contents of intercepted wiretaps or any evidence derived therefrom cannot be used at trial if the disclosure of those contents would be in violation of Title III. *See* 18 U.S.C. § 2515; *United States v. Chavez,* 416 U.S. 562, 570, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) ("Section 2515 provides that the contents of any intercepted wire or oral communication, and any derivative evidence, may not be used at a criminal trial, or in certain other proceedings, 'if the disclosure of that information would be in violation of this chapter.'" (quoting 18 U.S.C. § 2515)). Section 2517(3) authorizes the disclosure of the contents of wiretaps and any derivative evidence at trial:

> Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof. . . .

18 U.S.C. § 2517(3). Section 2518(8)(a) sets forth preservation and sealing procedures for intercepted wire communications, and makes judicial sealing a prerequisite for trial use and disclosure pursuant to Section 2517(3):

> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a).

Here, the Government used the Unsealed Sets to produce the wiretap evidence that it presented at trial: the audiotapes played at trial and introduced into evidence were copies of the Unsealed Sets; the transcripts given to the jury were produced from the Unsealed Sets; and the testimony about the recorded conversations was elicited after playing the audiotape copies of the Unsealed Sets. The Sealed Sets were left undisturbed in storage throughout the entirety of Ramirez's trial.

Ramirez claims that the Government's failure to use the Sealed Set as the source of its wiretap evidence violated 18 U.S.C.

§ 2518(8)(a). Ramirez points out that Section 2518(8)(a) makes no mention of judicial sealing for "[d]uplicate recordings" that are used or disclosed "for investigations" pursuant to Sections 2517(1) and (2).[3] In contrast, Section 2518(8)(a) imposes a judicial sealing requirement for wiretap recordings used and disclosed at trial: "[t]he presence of the seal provided for by this subsection ... *shall be a prerequisite* for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517." (Emphasis added.) According to Ramirez, this means that unsealed duplicates can only be utilized for investigative purposes, and not to prepare evidence and other trial materials. Therefore, he argues that since the Government's wiretap evidence was sourced from unsealed duplicates, its presentation at trial was improper.

We reject Ramirez's reading of Section 2518(8)(a) because the plain language does not support it. First, Section 2518(8)(a) does not prohibit the Government from using unsealed duplicates for purposes that go beyond investigation. In fact, the Government may use unsealed duplicates at trial if the contents of those duplicates exist in a properly-sealed set of recordings. Section 2518(8)(a) makes a judicial seal a condition for the in-trial use or disclosure of "the *contents* of any wire, oral, or electronic communication or evidence derived therefrom ...." (Emphasis added.) It is silent, however, as to the manner of such a

disclosure; Section 2518(8)(a) does not, for example, specify that the contents of a properly-sealed wiretap recording must be disclosed through the use of the sealed set of tapes instead of through unsealed duplicates, witness testimony, transcripts, or any other manner of disclosure. *See United States v. Rivera*, 153 F.3d 809, 812 (7th Cir.1998) ("This provision broadly states that the content of such recordings may be disclosed in court proceedings, but places no restrictions on the form of the disclosure."). This means that Section 2518(8)(a) imposes no restrictions on how the Government chooses to use and disclose the contents of a properly-sealed wiretap communication at trial. *See id.* ("[A]s long as the government complies with Title III, it may, at trial, disclose the contents of the recording in whatever fashion it chooses, including the use of duplicate and compilation tapes."); *United States v. Denton*, 556 F.2d 811, 816 (6th Cir.1977) ("[W]e find no violation of [Title III] in the preparation of the [composite tapes and transcripts] and their admission in evidence."); *United States v. DiMuro*, 540 F.2d 503, 512 n. 15 (1st Cir.1976) (rejecting the argument that Section 2518(8)(a) "bars the presentation at trial of a composite tape," and concluding that "[t]he statute does not apply to the preparation of a trial tape of selected intercepted conversations whose accuracy is not at issue"); *see also United States v. Scully*, 546 F.2d 255, 270 (9th Cir.1976) ("There

---

**3.** Section 2517(1) and (2), Title 18 of the United States Code, provides the following:
(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official

duties of the officer making or receiving the disclosure.
(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

was also no error in allowing the government to produce a single master tape of all the conversations it intended to use and to introduce the master along with the originals into evidence."), *judgment vacated on other grounds sub nom. United States v. Cabral,* 430 U.S. 902, 97 S.Ct. 1168, 51 L.Ed.2d 578 (1977).

Second, Section 2518(8)(a)'s sealing requirement does not preclude unsealed duplicates from being a proper source of the wiretap evidence that the Government uses and discloses at trial. To satisfy the sealing requirement, Section 2518(8)(a) demands that "the recording of the contents of any wire, oral, or electronic communication ... shall be made available to the judge issuing such order and sealed under his directions." Once this is done, however, it is "the contents of any wire, oral, or electronic communication or evidence derived therefrom," not the contents of the sealed recordings, that may be used or disclosed. This is an important distinction. Section 2518(8)(a) specifically distinguishes between "the contents of any wire, oral, or electronic communication," which "shall, if possible, be recorded ...," and "the recording of the contents of any wire, oral, or electronic communication," which "shall be ... sealed under [the judge's] directions." Since fulfilling the sealing requirement allows the in-trial use and disclosure of "the contents," not the judicially sealed "recording of the contents," the source of the materials used and disclosed at trial need only be "the contents," and not the judicially sealed "recording of the contents." Therefore, Section 2518(8)(a) does not require the Government to source its wiretap evidence from the judicially sealed set of recordings rather than an unsealed set of duplicates, provided that a properly judicially sealed set exists.

In sum, as long as the Government has obtained and preserved a set of wiretap recordings in accordance with Title III, Section 2518(8)(a) neither restricts the manner in which the Government chooses to use and disclose the contents of those recordings at trial, nor requires the Government to source its wiretap evidence from a judicially sealed set of recordings. In other words, under Title III, the Government may use duplicate tapes, compilation tapes, transcripts, trial testimony, or any other manner of use or disclosure provided that the contents to be used or disclosed exist in a properly obtained and sealed set of wiretap recordings.

We recognize that Section 2518(8)(a) expressly provides that "[d]uplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations," but contains no similar express authorization for the use of duplicates at trial. Unlike Ramirez, however, we do not interpret this language as prohibiting the Government from using unsealed duplicates or materials sourced from such duplicates at trial. Although the well-established principle of statutory construction of *expressio unius est exclusio alterius* instructs that when Congress expresses one thing, it excludes the others, this principle "should be taken with a grain of salt—or even better, with a grain of common sense." *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 372 (3d Cir.1999). *Expressio unius* " 'serves only as an aid in discovering legislative intent when that is not otherwise manifest' " and " 'can never override clear and contrary evidences of Congressional intent.' " *Id.* at 373 (quoting *United States v. Barnes,* 222 U.S. 513, 519, 32 S.Ct. 117, 56 L.Ed. 291 (1912) and *Neuberger v. Comm'r,* 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940)).

Here, Section 2518(8)(a)'s clear focus is on preserving the accuracy and authenticity of the contents of the wiretap record-

ings used and disclosed at trial. *See* 18 U.S.C. § 2518(8)(a) ("The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as *will protect the recording from editing or other alterations.*" (emphasis added)); *United States v. Ojeda Rios*, 495 U.S. 257, 263, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990) ("The primary thrust of § 2518(8)(a), and a congressional purpose embodied in Title III in general, is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." (internal citations omitted)); *DiMuro*, 540 F.2d at 512 n. 15 ("The primary purpose of § 2518(8)(a) is to ensure accuracy of recordings at the time of monitoring and to require sealing to deter alterations."). Allowing the use of unsealed duplicates and materials sourced from such duplicates at trial furthers Section 2518(8)(a)'s aim: an original recording remains sealed and undisturbed so that if a defendant "had reason to question the authenticity of the recording, or wished to assert that misleading editing has been done, the original tapes would be available to serve as the definitive record of what was recorded off of the [wiretap]." *Rivera*, 153 F.3d at 812. In contrast, requiring the use of a sealed set as either the wiretap evidence presented at trial or its source risks compromising the accuracy and authenticity of the contents of those recordings: the sealed set would be subject to additional post-sealing use and manipulation, which would increase the possi-

bility of damage, loss, or destruction.[4] Therefore, Section 2518(8)(a) does not prevent the use of unsealed duplicates or materials sourced from such duplicates at trial as long as an original was recorded and judicially sealed in accordance with Title III.[5]

We note that Section 2518(8)(a) does not completely bar the use and disclosure of the contents of all unsealed wiretap recordings; "a satisfactory explanation for the absence [of a seal]" can be enough to permit in-trial use and disclosure. 18 U.S.C. § 2518(8)(a). This confirms that there is nothing talismanic about the presence of a judicial seal. *See also Ojeda Rios*, 495 U.S. at 263, 110 S.Ct. 1845 ("The presence or absence of a seal does not in itself establish the integrity of electronic surveillance tapes."). As the Supreme Court has observed, "the seal is a *means* of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded." *Id.* (emphasis added). Here, the Sealed Set provided Ramirez with a means of verifying the accuracy and authenticity of the contents of the wiretap recordings that the Government sought to use and disclose at trial.. Section 2518(8)(a) requires nothing more.

Nothing in our holding today should be taken as curtailing a defendant's ability to challenge the Government's use and disclosure of the contents of wiretap record-

---

4. We acknowledge that this concern could be addressed if courts judicially sealed multiple sets of wiretap recordings. This way, one set could remain sealed and undisturbed while the Government unseals and uses the others as the source of its trial evidence. While this may be an available practice, no language in Section 2518(8)(a) expressly requires it. As with our reading of Section 2518(8)(a), it is the presence of one sealed and undisturbed

set that preserves the accuracy and authenticity of the contents of wiretap recordings.

5. The Federal Rules of Evidence are similarly accepting of the use of duplicates at trial. *See* Fed.R.Evid. 1003 ("A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.").

ings on other grounds—for example, by claiming that duplicates, compilations, transcripts, or trial testimony inaccurately represent the original recordings or are otherwise inadmissible under the Federal Rules of Evidence. But the mere fact that the Government sourced its wiretap evidence from an unsealed duplicate does not render its presentation of that evidence improper. Here, Ramirez does not dispute that the Sealed Set fully complied with Title III, nor does he contest that the contents of the Sealed Set are any different from those of the Unsealed Sets. Accordingly, the Government's presentation of its wiretap evidence at trial did not violate Title III.

## IV.

■ Ramirez's second claim of error is that the Government's failure to broadcast over an audio speaker in the courtroom seven recorded conversations as they were being played through headphones for the trial participants violated his Sixth Amendment right to a public trial. If such a constitutional violation occurred, Ramirez would be entitled to a new trial. *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (characterizing the denial of the Sixth Amendment right to a public trial as a "structural" error (citing *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984))).[6]

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." U.S. Const. amend. VI. This guarantee " 'has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.' " *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (quoting *In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 92 L.Ed. 682 (1948)). " 'The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions....' " *Waller,* 467 U.S. at 46, 104 S.Ct. 2210 (quoting *Gannett,* 443 U.S. at 380, 99 S.Ct. 2898). Additionally, "a public trial encourages witnesses to come forward and discourages perjury." *Id.*

■ Nevertheless, the Sixth Amendment right to a public trial is not absolute; it "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Id.* at 45, 104 S.Ct. 2210. But to justify a denial of the public trial right, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced...." *Id.* at

---

**6.** At the outset, we agree with Ramirez that the District Court erred in holding that he had waived his objection. The Government does not dispute Ramirez's assertion that he raised his Sixth Amendment challenge as soon as he suspected a violation. His failure to object earlier cannot be deemed a waiver. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be vol-

untary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). We will therefore address the merits of Ramirez's claim and "[w]e may affirm the rulings of the District Court for any proper reason that appears on the record even where not relied on by it." *United States v. Perez,* 280 F.3d 318, 337 (3d Cir.2002).

48, 104 S.Ct. 2210.[7] Here, the Government has offered no such reason. At oral argument, it candidly characterized as a "mistake" its unilateral decision to turn off the audio speaker. "Mistake" though it may have been, that does not lead us ineluctably to conclude that Ramirez's Sixth Amendment rights were violated. One significant question remains: when audiotape evidence is played for the jury, judge, counsel, defendant, and testifying witness through headphones, does a failure to simultaneously broadcast that evidence in the courtroom amount to a closure of the courtroom that violates a defendant's Sixth Amendment right to a public trial?

■ According to the Supreme Court, the Sixth Amendment's "requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Here, any member of the public desiring to attend Ramirez's trial had the opportunity to do so.[8] Therefore, for a Sixth Amendment violation to have occurred, the failure to simultaneously broadcast the recordings in the courtroom must have denied the public an opportunity to "report what they have observed." *Id.*[9] We do not believe that it did.

Certainly, the failure to broadcast the recordings in the courtroom as they were being played for the trial participants does, to a limited degree, inhibit the public's ability to report what it has observed. Without an opportunity to listen to the recordings at the same time that the trial participants themselves heard them, the public is denied some small amount of context with which to inform its in-court observations. For example, although the

---

7. Other criteria also must be met before a closure is constitutional. *See Waller*, 467 U.S. at 48, 104 S.Ct. 2210 ("[T]he closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.")

8. In that respect, the present case differs from the multitude of public trial cases where some or all members of the public were prevented from attending courtroom proceedings. *See, e.g., Waller*, 467 U.S. at 40–41, 104 S.Ct. 2210 ("These cases require us to decide the extent to which a hearing on a motion to suppress evidence may be closed to the public over the objection of the defendant consistently with the Sixth and Fourteenth Amendment right to a public trial."); *Gannett*, 443 U.S. at 375, 99 S.Ct. 2898 (addressing the propriety of the trial court's decision to grant the defendants' "request[] that the public and the press be excluded from the [pretrial] hearing"); *Walton v. Briley*, 361 F.3d 431, 432–33 (7th Cir. 2004) (holding that the prosecution's presentation of its case "in the late evening hours after the courthouse had been closed and locked for the night," which "foreclose[d] the attendance of the public ..." violated the Sixth Amendment); *Peterson v. Williams*, 85 F.3d 39, 41 (2d Cir.1996) ("[W]e are asked to determine whether a defendant was deprived of his Sixth Amendment right to a public trial when a trial judge inadvertently left a courtroom closed for twenty minutes during which the defendant testified."); *United States v. Sherlock*, 962 F.2d 1349, 1356–59 (9th Cir. 1992) (holding that the "temporary exclusion from the courtroom of defendants' families during one witness's testimony" did not violate the Sixth Amendment); *Nieto v. Sullivan*, 879 F.2d 743, 753–54 (10th Cir.1989) (deciding that the exclusion of the defendant's relatives from the courtroom during the victim's testimony did not violate the Sixth Amendment); *Douglas v. Wainwright*, 739 F.2d 531, 532–33 (11th Cir.1984) (concluding that there was no Sixth Amendment violation where "the press and family members of the defendant, witness, and decedent were all allowed to remain").

9. Absent any suggestion that the press' ability to attend the trial and report what they have observed differed from that of the public, we need not analyze the press separately in this case.

public was able to observe and hear live witness testimony about the recordings, this testimony may have been difficult to follow without having recently heard the referenced recordings. Similarly, while the public could see how jurors reacted to the recordings as they were being played, it could not associate these responses with specific speakers, words, or inflections contained in the tapes. It is true that the public could attempt to piece together the context of its observations after consulting the transcripts or listening to the tapes at a later time. Yet it is also true that this picture would be incomplete because the public had no opportunity to simultaneously listen to the tapes. Without the ability to listen to the tapes as they were being played for the trial participants, the public's capacity to understand its courtroom observations is necessarily limited, thus affecting its ability to report what it has observed.

Nonetheless, these limitations do not rise to the level of a Sixth Amendment violation. Similar contextual deprivations routinely occur in courtroom proceedings without running afoul of the Constitution, and without constitutional challenge. For instance, witnesses often testify about documents whose contents are not simultaneously displayed to the public. We have found no authority suggesting that such a practice is unconstitutional.[10] Additionally, unless the adverse party requests their production, *see* Fed.R.Evid. 612,[11] the contents of documents used solely to refresh a witness' recollection might never be shown in open court because the law does not

permit the jury to see them, *see United States v. Booz*, 451 F.2d 719, 725 (3d Cir. 1971) ("The rule in cases of refreshed recollection is that the writing may not be admitted into evidence or its contents even seen by the jury."). Likewise, "'the trial judge is not required to allow public or press intrusion upon the huddle' of a bench interchange, nor are judges restricted in their ability to conduct conferences in chambers distinct from trial proceedings." *United States v. Smith*, 787 F.2d 111, 114 (3d Cir.1986) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n. 23, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring in the judgment)).

The contextual deprivation that occurred here was not of constitutional import. It did not infringe on the Sixth Amendment any more than the accepted practices of denying the public simultaneous access to documentary evidence, bench interchanges, or conferences in chambers. The Government routinely elicits testimony about a photograph without also simultaneously displaying the photograph on a courtroom projector for the public to see. That the present case involved audiotapes instead of photographs or other documentary evidence does not alter the constitutionality of the proceedings. *See D'Aquino v. United States*, 192 F.2d 338, 365 (9th Cir.1951) ("Essentially the record[ings] were exhibits and we think that [the defendant] might as logically argue that she was denied a public trial because certain exhibits such as photographs, samples of handwriting, etc., although examined by the parties and by the jury were not passed around to the

---

10. Indeed, certain documentary evidence, such as a signed confession or a photograph of the defendant committing the crime, can be at least as probative of the defendant's guilt as the tapes used in this case were of Ramirez's participation in the drug distribution conspiracy.

11. Rule 612 provides that "an adverse party is entitled to have the writing [used to refresh memory for the purpose of testifying] produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

spectators in the courtroom."). Accordingly, any deprivation of the public's opportunity to "report what they have observed" was not of constitutional proportion. The failure to simultaneously broadcast the seven recorded conversations over the courtroom's public loudspeaker did not violate Ramirez's Sixth Amendment right to a public trial. *See Warner Commc'ns,* 435 U.S. at 610, 98 S.Ct. 1306.

We emphasize the limited nature of our holding. The public was not completely denied access to audiotapes or their contents. Prior to the presentation of the seven recorded conversations that implicated Ramirez, the District Court had admitted all the audiotapes into evidence and made the transcripts a part of the record. Once this was done, the recordings and their contents were available for public inspection, and Ramirez's trial was "subject to contemporaneous review in the forum of public opinion ...," *Gannett,* 443 U.S. at 380, 99 S.Ct. 2898 (internal quotations and citation omitted), even though the Government did not play the recordings over an audio speaker in the courtroom. Had the recordings or their contents been unjustifiably withheld from the public for a significant period of time, that might well have constituted a violation of law. *See United States v. Martin,* 746 F.2d 964, 968 (3d Cir.1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents. It includes transcripts, evidence, pleadings, and other materials submitted by litigants." (internal quotations and citations omitted)).[12] That, however, is not our case. The present case only concerns whether the Sixth Amendment requires that the public have the opportunity to listen to audiotape evidence at the same time it is being played for the trial participants. We hold that it does not.

## V.

The wiretap evidence that the Government used against Ramirez was in full compliance with Title III. The Government's presentation of that evidence, although marred by an unfortunate "mistake," also did not violate Ramirez's Sixth Amendment right to a public trial. Accordingly, we will affirm the judgment of the District Court.

---

12. We do not mean to suggest that such a potential violation necessarily would be of constitutional dimensions.