NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1952
_____

WAYNE JAMES,

Appellant

v.

VICTORIA HOUSE, INC.

On Appeal from the District Court of the Virgin Islands, Appellate Division
(D.C. No. 1:05-cv-00090-CVA-GWC)
Panel: Hon. Curtis V. Gómez, Hon. Raymond L. Finch and
Hon. James S. Carroll, III.
_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2010

Before: SMITH, CHAGARES and JORDAN, Circuit Judges.

(Filed: July 7, 2010)
_____

OPINION
_____


CHAGARES, Circuit Judge.

    This appeal arises out of Victoria House, Inc.'s ("Victoria House") forcible entry

and detainer action against its tenant, Wayne James. After a trial, the Superior Court of

the Virgin Islands found in favor of Victoria House, entered a Judgment of Restitution

against James, and ordered him to vacate the premises. The Appellate Division of the District Court of the Virgin Islands of the United States ("Appellate Division") affirmed the Superior Court's order. For the following reasons, we will affirm the judgment of the Appellate Division.

## I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

Victoria House owns and operates a three-story mixed-use residential and commercial building in St. Croix, Virgin Islands. James was a tenant occupying the third floor of the building. He began his occupancy under a one-year written lease agreement, effective September 1, 2003. After the lease expired on August 31, 2004, James became a month-to-month tenant; he continued to tender, and Victoria House accepted, the monthly rent.

James testified before the Superior Court as follows. From the beginning of his tenancy, the unit had ongoing problems with its water supply. In January 2005, he returned from traveling abroad and noticed that the water was discolored. He complained to Norma Gardine-Glenn, Victoria House's president. Shortly thereafter, he told Gardine-Glenn that the water seemed to be over-chlorinated because it burned his face and smelled like Clorox. Gardine-Glenn responded that James complained when the water was discolored and complained when it was over-chlorinated; "[w]hich one would [he]

2

prefer?" Joint Appendix ("JA") 38. She told him the Clorox would dissipate and "wouldn't kill [him]." JA 39. James responded that he "would prefer clean, clear, drinking water." JA 38. In late January 2005, Gardine-Glenn switched the water source, fixing the problem. Thereafter, James tendered, and Victoria House accepted, rent for January and February 2005.

On February 18, 2005, Victoria House served James with a Notice to Quit, requiring him to vacate the premises. However, James did not vacate the unit. In April 2005, Victoria House served James with a Summons and Complaint for a forcible entry and detainer. According to James, the failure of Victoria House to renew his tenancy was in retaliation for his complaints about the water.

Gardine-Glenn testified before the Superior Court as follows. Victoria House terminated the lease "mainly because of persistent complaints about every little thing[,]" including a written demand that Victoria House purchase a fifty-cent pull chain for a lamp. JA 49. In late February or early March 2005, James telephoned her home at approximately 11:00 pm and shouted at her regarding the water. Later that night, he drove to her home, parked in her driveway and honked his horn until Gardine-Glenn's husband came outside. In addition, James used the space to store furniture even though the lease expressly prohibited storing furniture there and Gardine-Glenn specifically told him not to store the furniture in the unit because the floor was not strong enough to sustain the extra weight.

3

After the close of testimony, the Superior Court ruled in favor of Victoria House. The trial judge found that James had received proper notice to vacate the premises and failed to do so. The court also determined that James failed to establish a retaliatory eviction defense because that defense requires the tenant to report the violation to a civil authority. Since James complained about the water to the landlord only, the affirmative defense was unavailable to him. The Superior Court issued a Judgment of Restitution, dated April 22, 2005, that, inter alia, ordered James to vacate the premises.

On March 5, 2009, the Appellate Division affirmed the Superior Court's decision on the basis that James failed to establish that Victoria House evicted him because of his complaints about the water. Rather, the Appellate Division held, the evidence supported the conclusion that the termination of the tenancy was at least equally motivated by behavior the landlord regarded as rude and petty. The Appellate Division declined to reach the issue of whether James's complaint to the landlord (as opposed to a civil authority) could serve as the basis for a retaliatory eviction defense. James's timely appeal followed.

II.

The Superior Court had jurisdiction to hear this matter under V.I. Code Ann. tit. 4, § 76(a). The Appellate Division had jurisdiction to review the decision of the Superior Court pursuant to 48 U.S.C. § 1613a(a) and V.I. Code Ann. tit. 4, § 33. We have jurisdiction to review final orders of the Appellate Division under 48 U.S.C. § 1613a(c).

4

In reviewing the Appellate Division's orders, we "review the trial court's determination using the same standard of review applied by the first appellate tribunal." Tyler v. Armstrong, 365 F.3d 204, 208 (3d Cir. 2004) (citations omitted). An appellate court reviews a trial court's findings of fact for clear error, and reviews de novo a trial court's application of law and legal conclusions. See D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010); Poleon v. Gov't of the V.I., 184 F. Supp. 2d 428, 430 (D.V.I. App. Div. 2002).

III.

In the absence of local law to the contrary, the common law, as expressed in the American Law Institute's Restatements of the Law, fills the gaps in the Virgin Islands' statutory law. See V.I. Code. Ann. tit. 1, § 4; Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008). The Restatement (Second) of Property sets forth the applicable law on retaliatory evictions in the Virgin Islands:

> [a] landlord has taken retaliatory action against a tenant with respect to residential property whenever he undertakes to terminate a tenancy that is terminable by an appropriate notice, or refuses to renew a tenancy for a specified term when that term ends, if:
>
> (1) there is a protective housing statute embodying a public purpose to insure proper conditions of housing, especially multi-unit housing designed for rental to tenants of low or moderate income;
>
> (2) the landlord is in the business of renting residential property;
>
> (3) the tenant is not materially in default in the performance of his obligations under the lease at the time the landlord acts;
>
> (4) the landlord is primarily motivated in so acting because the tenant, either

5

alone or through his participation in a lawful organization of tenants, has complained about a violation by the landlord of a protective housing statute; and

(5) the tenant's complaint was made in good faith and with reasonable cause.

Restatement (Second) of Prop.: Landlord & Tenant § 14.8. The burden of proving the landlord's retaliatory motive is on the tenant. Id. § 14.8 cmt. f. It is not sufficient to demonstrate that the landlord is motivated by several reasons, "only one of which is the tenant's complaint about a violation of a protective housing statute." Id.

The Appellate Division concluded that James failed to establish the fourth element, that Victoria House's primary motivation for evicting James was his complaint about the water quality. James argues on appeal that the Appellate Division erred in affirming the Superior Court on this basis.

A reviewing court may affirm a trial court's ruling for "any proper reason that appears on the record even where not relied on by [the trial court]." United States v. Lnu, 575 F.3d 298, 305 n.6 (3d Cir. 2009) (citations omitted). Here, the record supports the Appellate Division's determination that James failed to establish that Victoria House was primarily motivated by his complaints about the water. Instead, Gardine-Glenn's unrebutted testimony shows that Victoria House was at least equally motivated to evict James based on behavior it regarded as inappropriate. First, Gardine-Glenn testified that James telephoned her around 11:00 pm, screaming about the water, and later that night drove to her home, parked in her driveway and honked the horn until her husband came

6

out of the house. Gardine-Glenn stated that she was concerned James would wake her neighbors. James left a jug of discolored water in Gardine-Glenn's driveway when he drove away. Second, Gardine-Glenn stated that James made "persistent complaints about every little thing," including a written demand for Victoria House to replace a fifty cent lamp chain. JA 49. Third, it is undisputed that James stored furniture in the space in violation of his lease. The burden was on James to establish retaliatory motive, and his failure to rebut these non-retaliatory motivations put forth by Victoria House is fatal to his affirmative defense.

Because James failed to establish the primary motivation element, the Appellate Division was not required to address whether James' complaint to Victoria House alone was sufficient to support a claim of retaliatory eviction. For the same reason, we need not decide whether a good faith complaint to a landlord may serve as the basis for a retaliatory eviction claim.

IV.

For the foregoing reasons, we will affirm the decision of the Appellate Division.

7