# ANSELMO FARRINGTON, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2012-0122

Supreme Court of the Virgin Islands

September 16, 2013

JOSEPH A. DIRUZZO, III, ESQ., Fuerst, Ittleman, David & Joseph, PL, Miami, FL, *Attorney for Appellant*.

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 16, 2013)

SWAN, *Associate Justice.* Appellant, Anselmo Farrington ("Farrington"), appeals the Superior Court's finding that his Sixth Amendment right to a public trial was not violated and its denial of a hearing was consistent with this Court's decision in *Codrington v. People*, 57 V.I. 176 (V.I. 2012). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Farrington was tried by a jury and convicted of third degree robbery and grand larceny. Jury selection was conducted on January 19, 2010. The trial commenced on January 21, 2010 and concluded with guilty verdicts on January 22, 2010. The sentencing hearing was held on May 10, 2010. Farrington timely appealed his conviction to this Court on June 28, 2010 alleging a violation of his Sixth Amendment right to a public trial. After hearing oral arguments, this Court remanded the case to the Superior Court. In accordance with this Court's remand mandate, the Superior Court held an evidentiary hearing on December 7, 2011, and issued its finding of facts to supplement the record in accordance with this Court's August 23, 2011 Opinion and Order. The facts emanating from the evidentiary hearing are as follows:

Cynthia Simon ("Simon"), Farrington's mother, testified that she came to the courthouse to support her son accompanied by her mother, Ruth Simon, and her granddaughter's mother, Shaniqua Dawson ("Dawson"). (J.A. 71.) She testified that she attempted to open the door to the courtroom but was unable to do so, at which time, her mother also attempted to open the door. (J.A. 72.) Simon stated that someone who she believed to be a marshal, and described as, "a handsome guy, slim . . . . I think his suit was like a brownish suit. He was a slim handsome [g]uy. He was tall," told them that they could not enter the courtroom but could have a seat outside. (J.A. 73.) Simon further testified that they sat outside the courtroom for 15-20 minutes. While outside the courtroom, she saw

a large group of people exiting the courtroom. (J.A. 74.) On cross examination, Simon testified that she did not tell the man at the courtroom's door that she was Farrington's mother nor did she inform him of her reason for being at the court. (J.A. 77.) On redirect examination, Simon testified that when she was allowed entry to the courtroom, she "came on the stand to say good complements or whatever kind of complements on my son." (J.A. 79.) Upon the trial court's questioning of Simon, she again stated that she only testified during the sentencing and not during the trial. (J.A. 80.) She clarified for the trial court that she wanted to attend the jury selection so that potential jurors would see her and recognize her and potentially not want to serve on the jury or maybe want to serve on the jury. (J.A. 81.) Simon stated that once they entered the courtroom, she sat down. A few minutes later she was called to the witness stand and Attorney DiRuzzo questioned her regarding her son's character. (J.A. 81-82.) She again testified that she was waiting outside the courtroom at the direction of the marshal on the same day that she testified on behalf of her son. (J.A. 82.) Simon also testified that she recalled discussing the issue of entering the courtroom with Attorney DiRuzzo after the trial was completed. (J.A. 85.) Her memory was refreshed when she was allowed to review the affidavit that she signed stating that she was not allowed to enter the courtroom during jury selections. The affidavit was dated April 2010 according to Simon. (J.A. 88.) Simon, after her memory was refreshed, stated that she was only prevented from entering the courtroom on one occasion which was "when we were suppose[d] to go ahead and come inside and say what I have to say about my son." (J.A. 90.) She continued to testify that she was getting confused and that she is not good with dates. (J.A. 91.) Again, Simon stated that she was kept outside the courtroom on the day she testified at sentencing. (J.A. 92.)

Dawson testified that she was with Simon and Farrington's grandmother on the day they were prevented from entering the courtroom. Dawson further testified that they attempted to enter the courtroom but a marshal extended his head outside the courtroom's door and told them to have a seat outside because they could not enter the courtroom at the time. (J.A. 96.) Dawson stated that they waited outside for about 20 minutes at which time she saw more than 10 people but could not say that it was more than 20 people leave the courtroom. (J.A. 96-97.) She also testified that one of Farrington's uncles was outside the courtroom as they waited

to be allowed entry. Dawson stated that she was prevented by a marshal from entering the courtroom before the guilty verdicts were announced. (J.A. 99.) Dawson described the marshal as tall. Her recollection is that he wore glasses, was dark skinned, was bald headed, and wore a suit but she could not recollect its color. (J.A. 102.) Dawson further testified that she did not discuss her wait outside the courtroom with anyone until the trial was completed and after sentencing of Farrington. (J.A. 104.) Also, Dawson testified that she was prevented from entering the courtroom only one time during the trial. (J.A. 106.) She further stated that she was present at all stages of the trial except during jury selection. (J.A. 108.)

Farrington took the stand and testified that he did not recall seeing his mother, grandmother, or Dawson present during the jury selection. (J.A. 110-11.) He also testified that he did not recall if any of the other persons were present at the jury selection. (J.A. 115-16.) Counsel for both parties presented brief arguments to the trial court. The trial court announced that it would enter its findings in writing, which it did in the trial court's December 9, 2011 Order. Subsequently, Farrington filed a renewed motion for a new trial and for other relief, including a request that the Superior Court conduct a hearing regarding his claim of ineffective assistance of counsel pursuant to our opinion in *Codrington*. The trial court denied Farrington's motion in an October 29, 2012 Order, for the reasons explained in its Memorandum Opinion entered on the same date. Farrington filed his Notice of Appeal a few days afterward, on November 2, 2012, indicating that he was appealing from both the December 9, 2011 Order and the October 29, 2012 Order and Memorandum Opinion, which modified the December 9, 2011 Order. (J.A. 1, 17 n.1.)

## II. JURISDICTION AND STANDARD OF REVIEW

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Rodriguez v. Bureau of Corrs.*, 58 V.I. 367, 370 (V.I. 2013) (citing *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011)); *see also In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). As explained above, this case was remanded for an evidentiary hearing in this

Court's August 23, 2011 Opinion and Order, and the required evidentiary hearing was held and the findings of fact were initially entered on December 9, 2011, but were subsequently modified following further motion practice in the Superior Court's October 29, 2012 Memorandum Opinion and Order, which "dispose[d] of all outstanding motions in compliance with [this] Court's remand." (J.A. 31.) Farrington's November 2, 2012 Notice of Appeal is thus timely; therefore, this Court has jurisdiction to consider his appeal.

The standard of review for this Court's examination of the trial court's application of law is plenary and its findings of facts are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). The right to a public trial is a constitutional right that when violated is a structural error and is therefore not subject to harmless error review. *Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000) (citing *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

### III. ISSUES

1. Whether Farrington's Sixth Amendment right to a public trial was violated.

2. Whether the Superior Court erred by failing to inquire into Farrington's ineffective assistance of counsel claim in accordance with this Court's decision in *Codrington v. People*.

### IV. DISCUSSION

#### A. Farrington's Sixth Amendment right to a public trial was not violated.

The United States Supreme Court's "rulings with respect to the public trial right rest upon . . . provisions of the Bill of Rights . . . applicable to the States via the Due Process Clause of the Fourteenth Amendment. The Sixth Amendment directs, in relevant part, that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .' " *Presley v. Georgia*, 558 U.S. 209, 211-12, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010) (citing *In re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948)).

Farrington asserts that his Sixth Amendment right to a public trial was violated when his relatives were prevented from entering the courtroom during the jury selection process.[1] The question whether "the voir dire of prospective jurors must be open to the public" was answered in the affirmative in *Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984); *see also Presley*, 558 U.S. at 212-13 ("the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors").

While the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule. *Id.* at 213. "The right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting the disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.*; *see Presley*, 558 U.S. at 213-14. *See also Kelly v. State*, 195 Md. App. 403, 6 A.3d 396, 404 (2009) (citing *Robinson v. State*, 410 Md. 91, 976 A.2d 1072, 1079 (2009)). "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 558 U.S. at 215. The Supreme Court in *Waller* provided guidelines for courts to consider before closing a criminal trial at any stage: "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48.

The difficulty in applying *Waller* or *Presley* to this case is that those cases were instances where a party requested the courtroom's closure or

---

[1] All three affidavits were identical. The relevant content is as follows:

I, ___, hereby affirm as follows:

1. This Affidavit is written in support of the above-referenced case.

2. I am related to Anselmo Farrington.

3. On Tuesday, January 19, 2010, I attempted to enter the Courtroom during the jury selection and/or *voir dire* for the above-referenced case.

4. I was not permitted to enter said Courtroom during jury selection and/or *voir dire*.

Cynthia Y. Simon, Ruth E. Simon, and Shaniqua S. Dawson signed their affidavit on April 9, 2010. (J.A. 60-62.)

the court made an affirmative decision to close the proceeding to the public.[2] Typically, courtroom closures are that challenged as being violative of the Sixth Amendment right to public trials are situations where there was an affirmative action of the court. *See, e.g., United States v. Raffoul,* 826 F.2d 218, 221 (3d Cir. 1987) (judge closed courtroom on defense motion based on threat to witness' family members). But there are a number of instances where there was no court action but rather something inadvertent or unbeknownst to the court that occurred which caused the courtroom's closure. *See, e.g., United States v. Greene,* 431 Fed. Appx. 191, 195-99 (3d Cir. 2011) (Sixth Amendment violation not found where court security temporarily prevented defendant's brother from entering the courtroom during *voir dire.*) In this case, the trial court was unaware that members of Farrington's family were denied entry to the courtroom during the *voir dire* proceedings. The standards enumerated for consideration by *Waller* would have been applicable had a party petitioned the trial court for the alleged closure or the trial court had made that decision *sua sponte.*

The lack of an affirmative closure of the courtroom by the trial court prompted this Court to instruct the Superior Court to conduct an evidentiary hearing on the remand. Although the trial record has been supplemented, there still exists no clear evidence that the courtroom was affirmatively closed to Farrington's family members. The trial court's recitation of facts illustrates that the courtroom was filled beyond its capacity in violation of the fire marshal's directives. (J.A. 7.) Farrington asserts that it is irrelevant whether the closure was intentional or not intentional and supports this contention by citing to *Walton v. Briley,* 361 F.3d 431, 432 (7th Cir. 2004), but that case can be distinguished from this case because the courtroom closure in that case was imposed by the court, which is an affirmative closure, but that is absent in Farrington's case.

■ Another significant difference in this case is the juncture at which the alleged courtroom closure occurred. The alleged closure during Farrington's trial was during *voir dire* while *Briley's* closure was during the presentation of evidence which encompassed the entire presentation of the prosecution's case. *See id.* The presentation of evidence is a stage

---

[2] This distinction was made in *Farrington v. People,* 55 V.I. 644, 653-54 (V.I. 2011).

of trial in which the presence of the public might be more likely to discourage perjury, which is one of the purposes of the Sixth Amendment right to a public trial. *Waller*, 467 U.S. at 46; *United States v. Lnu*, 575 F.3d 298, 305 (3d Cir. 2009).

A case more analogous to the present fact pattern and thus providing this Court with more guidance is *Peterson v. Williams*, 85 F.3d 39, 40 (2d Cir. 1996), where there was an inadvertent and brief closure of the proceeding. In *Petersen*, the United States Court of Appeals for the Second Circuit determined whether the defendant's rights were infringed by considering whether the purpose of the Sixth Amendment was violated when the courtroom closure occurred. In addition the Second Circuit, also applied the "triviality standard" which does not dismiss or minimize a defendant's claims but, rather, considers "whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant — whether otherwise innocent or guilty — of the protections conferred by the Sixth Amendment." *Id.*

■■ The purpose of the public trial is for the defendant's benefit and to preserve the integrity of the court proceeding. *Gannett Co. v. DePasquale*, 443 U.S. 368, 380, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979) ("Our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant."); *Lnu*, 575 F.3d at 305 ("The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." (quoting *Waller*, 467 U.S. at 46) (internal quotation marks omitted)); *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty*, 457 U.S. 596, 606, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982) ("[P]ublic access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.") The Second Circuit citing to *Waller*, which Farrington also relies on, summarizes the purpose of the Sixth Amendment by stating,

> The Supreme Court has described the values furthered by the public trial guarantee as four: 1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury.

*Peterson*, 85 F.3d at 43 (citing *Waller*, 467 U.S. at 46-47.)

■ Considering the purpose of this right and the facts of this case, Farrington's Sixth Amendment right to a public trial was not violated. The evidence presented does not illustrate that the public, namely Farrington's family, was unable to insure by their presence, that he was treated fairly. Simon testified, although confused by the dates, that she attend the trial except for jury selection, which means that she was present at the opening statements, presentation of the evidence in the case, closing arguments, final jury instructions, and the announcing of the jury's verdicts. (J.A. 084.) Dawson also testified that she was present for all stages of the proceeding except jury selection. (J.A. 108.) Their testimony illustrates that the public was able to witness the examinations of each witness by both parties which would help to further the purpose of preventing perjury. (J.A. 108.) Although Farrington's friends and family were not allowed to enter the courtroom for approximately 15-20 minutes, we hold that his rights were not violated.

## B. The Superior Court did not err in its failure to hold a hearing to consider Farrington's claim under the *Codrington* case.

Farrington asserts that the Superior Court was required under this Court's decision in *Codrington* to hold a hearing to consider his claim of ineffective assistance of counsel. He states that the Superior Court was wrong because it too narrowly interpreted the *Codrington* decision and because the decision was published after the final verdicts in the case, it should be applied retroactively. Both of Farrington's assertions are rejected.

■ The *Codrington* decision is limited to claims of ineffective assistance of counsel that are presented pre-trial. 57 V.I. at 192. Farrington presented this claim more than two years after the conclusion of his trial. *Codrington* is simply not applicable to this case.

■ But assuming arguendo, Farrington simply does not make a case for ineffective assistance of counsel. Farrington based his claim on the fact that the compensation paid to his attorney, as a court appointed attorney, is less than what he considers adequate to permit his attorney to properly present his case. The typical ineffective assistance of counsel claim is rooted in *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which states that the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Further, "the court must then

determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

 Farrington fails to identify any specific omissions or acts that his counsel did or did not perform that would qualify his counsel's performance as being below the standard of professionally acceptable performance. Instead, Farrington cites to a speech made by Presiding Judge of the Superior Court, Darryl Donohue, at a legislative budget committee hearing, requesting additional funds for the attorney compensation fund. Farrington never addresses the legal standard for an ineffective assistance of counsel challenge.

The Superior Court, in its October 29, 2012 Memorandum Opinion, underscored the significant work performed by defense counsel in this case, stating that it "went far beyond that which is minimally mandated by the Constitution." (J.A. 37-38.) It is also noted in footnote 32 of the same opinion that Attorney DiRuzzo secured payment for the investigator and the identification witness in excess of the amount allotted by the court. (J.A. 37 n.32.) This claim of ineffective assistance of counsel, based upon the purported lack of adequate compensation, is insufficient on the facts and circumstances of this case to satisfy a claim of ineffective assistance. Therefore, Farrington's claim cannot be the basis of a reversal.[3]

## V. CONCLUSION

We affirm the decision of the Superior Court that the temporary and inadvertent closure of the courtroom during *voir dire* did not violate Farrington's Sixth Amendment right to a public trial. We also affirm the Superior Court's decision not to hold a hearing to determine the validity of Farrington's ineffective assistance of counsel claim based on the *Codrington* decision.

---

[3] Farrington also claims that *Codrington* should be applied retroactively to his case because the case was not published at the time of trial and he was diligent in filing his motion three days after its publication. This argument adds no merit to his already lacking ineffective assistance of counsel assertion.